# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **BRIAN BAUMAN[1],** | ) | **Case No. 1:04CV1757** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | **Magistrate Judge George J. Limbert** |
| **v.** | ) | |
| | ) | **INTERIM** |
| **CITY OF CLEVELAND, et al.,** | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| **Defendants** | ) | |

The instant matter is before this Court on a Motion for an Order to Show Cause filed by

Third-Party Defendants William Baumann ("W. Baumann") and Bradley Rd., Inc. ("Bradley")

and by Landsong Environmental Inc. ("Landsong"), who is not a party to this action.  ECF Dkt.

#88.  Third-Party Defendants and Landsong move the Court to issue an Order to Show Cause

why Defendants City of Cleveland ("Cleveland") and City of Cleveland Department of Public

Health ("Health Department") should not be held in contempt for violating this Court's July 13,

2006 Consent Decree and Final Judgment Entry ("July 13, 2006 Order").  For the following

reasons, the undersigned recommends that the Court DENY the Motion to Show Cause.  ECF

Dkt. #88.

## I.       FACTUAL AND PROCEDURAL HISTORY

In its Motion to Show Cause, Third-Party Defendants and Landsong outline the long

---

[1]  The undersigned notes that the proper spelling of Plaintiff's name is Brian Baumann.  *See* ECF
Dkt. #1-1.

history between the parties, which began in 2003.  ECF Dkt. #88 at 5-16.  Relevant to the instant litigation, on August 30, 2004, Cleveland removed an action from the Cuyahoga County Court of Common Please whereby Brian Baumann ("B. Baumann") filed a complaint against Cleveland, the Health Department, and various other defendants requesting a temporary, preliminary and permanent injunction, as well as a declaratory judgment, and filing claims for unjust enrichment, an unconstitutional taking, and various intentional torts.  ECF Dkt. #1, 1-1.

In his complaint, B. Baumann alleged that his brother, W. Baumann, approached him about entering into a business venture with him as W. Baumann owned land in Cleveland where his company, Bradley, operated a Construction and Demolition Debris ("C&DD") landfill ("The Landfill") from 1980 through February 28, 2003.  ECF Dkt. #1-1 at 3.  B. Baumann further alleged that Cleveland revoked the license for W. Baumann's C&DD Facility, thereby requiring W. Baumann and Bradley to cease operations and close The Landfill.  *Id*.

B. Baumann avers that he began negotiating with both his brother and Cleveland to obtain a C&DD license as owner and operator to reopen The Landfill because he had a good relationship with Cleveland and his brother was eager to enter into a business relationship with him due to the revocation.  ECF Dkt. #1-1 at 3-4.  He alleged that his deal with his brother was contingent upon Cleveland issuing him a valid C&DD license for The Landfill and Cleveland required not only that he comply with all statutory and administrative license requirements, but he also had to execute a separate agreement assuming personal responsibility for the previous licensing violations and to perform remedial work at The Landfill.  *Id*. at 4.

B. Baumann further alleged in his complaint that he began trying to satisfy Cleveland's requirements and as a prerequisite of obtaining a C&DD license, he had to obtain financial

assurance for the eventual closure of The Landfill under Ohio Revised Code ("ORC") § 3714.02 and Ohio Administrative Code ("OAC") 3745-400-13.  ECF Dkt. #1-1 at 4.  B. Baumann averred that he obtained a letter of credit for the financial assurances and the letter of credit was amended  in order to give Cleveland specific authority of enforcement "under the authority of Chapter 3714 of the Revised Code as amended." *Id*.  B.Baumann further averred that the letter of credit would become effective only when he executed an agreement with Cleveland and received the C&DD license*. Id.* at 5.  B. Baumann alleged that he continued negotiating with Cleveland and W. Baumann and Bradley, he submitted a complete licensing application, and he performed the remedial work as Cleveland requested.  *Id.*

B. Baumann averred that he delivered the completed license application, the letter of credit and data requested by Cleveland, and the signed agreement, but Cleveland did not sign the agreement and instead chose to reopen negotiations as to some of its terms.   ECF Dkt. #1-1 at 5. B. Baumann alleged that Cleveland never signed the agreement or issued him a license to own or operate The Landfill.  *Id*.  He averred that in March or April of 2004, he terminated negotiations with Cleveland and Cleveland thereafter sent a certified letter to the bank requesting that it honor the letter of credit from his account and deposit $250,000.00 from his account into an account in favor of Cleveland.  *Id*. at 6.  B. Baumann alleged that Cleveland has not and cannot present the bank with a C&DD license issued to him or present an executed land development agreement. *Id*.

Consequently, B. Baumann requested that the Court issue a declaratory judgment declaring that Cleveland has no right to the $250,000.00 and issue injunctive relief to prevent Cleveland from taking action to enforce the letter of credit.  ECF Dkt. #1-1 at 7.  He also alleged

a cause of action against Cleveland for violation of due process, an unconstitutional taking, conversion, theft, fraud and deceit by its enforcement of the letter of credit without following the procedure mandated by Ohio law and by its exercise of physical possession over the letter of credit. *Id*. at 7-12.  B. Baumann also alleged unjust enrichment, asserting that Cleveland received the benefit of $250,000.00 from him without repaying him or delivering something to him of comparable value. *Id.*

On September 16, 2004, Cleveland and other Defendants filed an answer to the complaint and included a counterclaim against B. Baumann for injunctive relief.  ECF Dkt. #4.  Cleveland alleged that B. Baumann was a partner in or with Bradley as represented in the original letter of credit that Cleveland received dated August 18, 2003.  *Id*. at 12.  Cleveland averred that Bradley has owned and operated The Landfill since September 1996, and on September 30, 2003, Bradley submitted a license renewal application that contained a letter of credit which represented that B. Baumann was a partner in Bradley and stated that Bradley owned property on which The Landfill was operated.  *Id.*

Cleveland further alleged in its counterclaim that B. Baumann operated The Landfill between December 2003 and May 2004 as he attempted to correct code violations and applied to renew an operator's license.  ECF Dkt. #4 at 12.  Cleveland cited the OAC which required the owner or operator of a C&DD facility to obtain and maintain financial assurance for closure of the facility until final closure is completed and approved by the licensing authority.  *Id.* Cleveland alleged that Bradley did not maintain adequate financial assurance for closure of The Landfill that it owned and operated and the amended letter of credit dated August 28, 2003 that was offered for financial assurance from August 2003 to August 2004 was inadequate to provide

complete financial assurance.  *Id.* at 12-13.  Cleveland alleged that B. Baumann refused to provide financial assurance as required by the OAC and was violating numerous other OAC by failing to remedy leachate and sediment-laden runoff discharging from The Landfill, failing to divert surface water from licensed disposal areas; provide drainage systems; failing to correct conditions causing ponding or erosion or silting, and failing to have a minimum slope as required by the OAC.  *Id*. at 12-15.  Cleveland alleged that due to the violations, the Health Department issued a license revocation order to Bradley requiring Bradley to submit a closure plan for The Landfill within six months, but Bradley did not submit a plan.  *Id*. at 15.  Cleveland alleged that B.Baumann was liable for all closing and environmental costs associated with The Landfill and it requested an injunction requiring him to correct all violations and to post adequate financial assurance for The Landfill's eventual closure.  *Id*. at 16.

In the second count of its counterclaim, Cleveland alleged that B. Baumann and Bradley violated the terms and conditions of the permit that they were issued by Cleveland's Director of Public Service because they committed specific violations and failed to take actions that were required.  ECF. Dkt. #4 at 17.

On September 20, 2004, Cleveland filed a third-party complaint against W. Baumann, Bradley, Gregory Happ ("Happ") M.E.B. Properties, Inc. ("MEB"), Connell Ltd. Partnership ("Connell"), Superior Demolition & Excavating, Inc. ("Superior D&E") and Superior Demolition, Inc. ("Superior").  ECF Dkt. #7.   Cleveland alleged that it was entitled to recover from these Third-Party Defendants all of B. Baumann's claims against it, and it was entitled to recover injunctive relief and civil penalties from them for their code violations at The Landfill. *Id*. at 3.  Cleveland further alleged that neither B. Baumann nor the Third-Party Defendants had

-5-

submitted an approved plan for closure of The Landfill and Cleveland had a current estimate of closure costs that exceeded $262,000.00. *Id*. at 11.  Cleveland moved for closure and violation costs and also moved for an injunction requiring the Third-Party Defendants to correct all violations and to post adequate financial assurance to secure the eventual closure costs of The Landfill.  *Id*.  B. Baumann filed an answer to the counterclaim.  ECF Dkt. #10.

On July 11, 2006, W. Baumann, Bradley, MEB, Superior D&E and Superior answered the complaint and filed a counterclaim against Cleveland.  ECF Dkt. #59.  They alleged that Bradley was the holder of a valid C&DD license and Cleveland committed selective enforcement and denied them equal protection of the laws by revoking its C&DD license without legal or factual grounds, and unconstitutionally took The Landfill by depriving them of all economic use of the properly by revoking their license and preventing an appeal of the violations that lead to the revocation.  *Id*. at 5-6.  They also alleged that this violated Bradley's civil rights under 42 U.S.C. § 1983.  *Id*. at 6.  The counterclaim against Cleveland also averred promissory estoppel, a due process violation, and unconstitutionally vague laws based upon the February 2003 license revocation order which cited noncompliance even though Cleveland had issued the C&DD license at the end of 2002 and a subsequent inspection by Cleveland in January of 2003 revealed no substantial non-compliance issues.  *Id*. at 7.

On July 13, 2006, the parties filed a Joint Motion to Approve Consent Decree and Final Judgment Entry.  ECF Dkt. #60.  The motion set forth the following purposes in entering into the Consent Decree:

a)      Under the Consent Decree, the license shall be reinstated, subject to certain conditions that ensure that all violations shall be corrected by a new operator, Edgerton Holdings LLC, who is not a party to the instant Settlement Agreement, but who has agreed to correct the violations and to

submit financial assurance that will substitute for the $250,000 letter of credit executed by the City.

b)  With the posting of financial assurance by the new operator, the $250,000 collected by the City of Cleveland from the letter of credit will be returned to Brian Baumann and all claims and counterclaims will be dismissed.

*Id.* at 2.  A copy of the Consent Decree and Final Judgment Entry was attached to the motion.

ECF Dkt. 60-1.  On the same date, the Court issued the Consent Decree and Final Judgment

Entry which provided:

Upon agreement of the parties and for good cause having been shown, the Court hereby issues the following Consent Decree and Final Judgment Entry in this case:

1.  The Court hereby orders that the 2003 construction and demolition debris license for the Bradley Road Landfill that is the subject of the above-referenced action ("Bradley Road Landfill") is reinstated and that the annual renewal licenses for 2004, 2005, and 2006 for the Bradley Road Landfill shall be deemed issued, subject to the following modifications:

(a)  The 2006 License is hereby modified to designate Edgerton Holdings LLC as the Operator for the Bradley Road Landfill (the "Operator").

(b)  The License is hereby modified to require that the Operator shall submit updated engineering plans for the future operation of the Bradley Road Landfill as may be required by the Ohio Administrative Code and rules of the City of Cleveland Department of Public Health.

(c)  The License is hereby modified to require that the Operator shall correct existing violations and address other related issues set forth herein at the Bradley Road Landfill on a compliance schedule mutually acceptable to the Operator and the City of Cleveland Department of Public Heath.  Such violations and issues include, but are not limited to the following:

• Correction of all violations listed in the License Revocation Order issued by the Cleveland Department of Public Heath, dated February 28, 2003.

- Stabilization of the slope in the areas of shallow slope failure in the proximity of Gino Lane.  Such stabilization measures shall include the regrading of the failure zone, the compaction and regrading of the slope to approximate slope contours, and the seeding, fertilizing and mulching to establish a permanent vegetative cover to minimize potential erosion.

- Regrading of eroded outslope areas adjacent to residential properties on Skyland Drive to a stable slope gradient.  Appropriate sediment and erosion control measures shall be installed.  These regraded areas shall be seeded, fertilized and mulched to establish a dense vegetative cover minimizing erosion potential.  Appropriate fencing or buffering shall be installed.

- Engineering plan preparation for completion of the identified tasks shall be completed within 20 working days after issuance of the City of Cleveland permits and licenses.  Construction shall begin within 20 working days after plan approval.  Weather conditions permitting, the Gino Lane slope erosion repair and re-vegetation should be complete within 30 working days; and the Skylane Drive slope erosion repair and re-vegetation should be complete within 45 working days.

(d)     The License is hereby modified to require that on or before July 11, 2006 Edgarton Holdings LLC shall provide the City with financial assurance in the form, manner and amount that satisfies the requirements of Rule 3745-400-14 of the Ohio Administrative Code as a substitution for the Escrowed Funds currently held by the City of Cleveland.

(e)     The License is hereby modified to continue to require that all operations of the Bradley Road Landfill shall comply with the applicable laws and regulations set forth in R.C. Chapter 3714 and the regulations adopted thereunder.  Such laws include the requirement that the owner/operator shall obtain a permit to fill from the City of Cleveland Department of Public Service prior to any landfill operations being performed, which the City shall not unreasonably refuse to issue.

2.     Subject to the terms and conditions of this Consent Decree and the Settlement Agreement executed by the parties, the Complaint and all

-8-

> counterclaims, amended counterclaims, and third-party claims in the
> above-referenced action shall be dismissed without prejudice.
>
> 3.    Each party shall bear its own court costs.
>
> 4.    The Court shall retain continuing jurisdiction to enforce the terms of this
> Consent Decree.

ECF Dkt. #61 at 1-4.   The Consent Decree is signed by the Honorable Peter C. Economus and by B. Baumann, W. Baumann, individually and on behalf of Bradley Road, Inc., Superior D&E, Superior, and MEB, and Cleveland.  *Id.* at 4-5.

On October 6, 2006, Cleveland filed a motion to show cause against W.Baumann, Bradley, Superior D&E and Superior asserting that they violated the Consent Decree and should be subject to sanctions for such conduct.  ECF Dkt. #62.  Cleveland alleged that these Third-Party Defendants wrongfully ejected and obstructed Edgerton Holdings LLC ("Edgerton"), the designated operator of the Bradley Road Landfill, from entering The Landfill, from operating The Landfill and from taking necessary actions to correct the violations at The Landfill as required by the Consent Decree.  *Id. at* 1-2.  Cleveland further noted that Edgerton had filed for and obtained temporary injunctive relief against these Third-Party Defendants as a result of this matter in the Cuyahoga County Court of Common Pleas.  *Id*. at 5.

On October 11, 2006, the Court issued an Order granting Cleveland's Motion to Show Cause and scheduled a hearing for October 30, 2006.  On October 26, 2006, W.Baumann., Bradley, MEB, Superior D&E and Superior filed a response to the Motion to Show Cause.  ECF Dkt. #63.  They asserted that evidence would be presented at the hearing that: Edgerton failed and refused to enter into any agreements regulating its relationship with Bradley;  Edgerton used the landfill property as its own private dumping ground, filling up about 10,000 yards of

-9-

Bradley's irreplaceable capacity at The Landfill; Edgerton failed to provide Bradley with any information about its operations; and Edgerton failed to provide any information about its financial capability or its illegal dumping activities.  *Id.* at 1-2.  They requested that the Court modify the Consent Decree to remove Edgerton as the operator, substitute a new operator, and dissolve the temporary restraining order issued in state court.  *Id.* at 2.

On October 30, 2006, Judge Economus held the show cause hearing.  On December 29, 2006, W.Baumann, Bradley, MEB, Superior D&E, and Superior filed a motion for modification of the Consent Decree and a request for a hearing.  ECF Dkt. #73.  On January 9, 2007, Cleveland filed a response to the motion, asserting that while the Court retained jurisdiction to enforce the terms of the original Consent Decree, it lacked authority to change the terms and language of the final Consent Decree and settlement agreement.  ECF Dkt. #76.  *Id*. at 3. Cleveland indicated that plain language of the Consent Decree incorporated the settlement agreement of the parties and both were unambiguous such that the Consent Decree could not be modified or amended without the written agreement of all of the parties.  *Id.* at 4.  Cleveland further asserted that while the Court may in limited instances modify a consent decree without the approval of all or some of the parties, the motion by these Third-Party Defendants and the facts of the case did not meet the high legal standard required in which to do so.  *Id*. at 5-6.

On November 16, 2006, the Court issued an Order finding that W.Baumann, Bradley, MEB, Superior D&E and Superior were in contempt of the Consent Decree for violating its terms by ejecting Edgerton from The Landfill and obstructing Edgerton from entering and operating The Landfill to correct the existing violations.  ECF Dkt. #68.  The Court enjoined these Third-Party Defendants from engaging in any further conduct violating the Consent Decree

or impeding Edgerton from operating The Landfill or face a sanction of $1,000.00 per day until the wrongful conduct ceased and the contempt of court was purged.  *Id*. at 2.  The Court also ordered that they pay the reasonable attorney fees of Cleveland for filing and prosecuting the Motion to Show Cause.  *Id.*

On January 18, 2007, the Court mooted the motion by W.Baumann, Bradley, MEB, Superior D&E and Superior to modify the Consent Decree upon the consent of the parties.

On June 12, 2007, Cleveland filed another Motion to Show Cause against W.Baumann, Bradley, MEB, Superior D&E and Superior as to why they should not be held in contempt and sanctioned for violating the Consent Decree and the Court's November 16, 2006 and January 18, 2007 Orders.  ECF Dkt. #78.  Cleveland asserted that these parties wrongfully interfered with and obstructed Edgerton from taking the necessary actions at The Landfill to correct existing violations under the supervision of the Ohio Environmental Protection Agency ("OEPA") and Cleveland.  *Id*. at 2.  Cleveland also asserted that they failed to pay the attorney fees that the Court awarded to Cleveland.  *Id.*

W.Baumann, Bradley, MEB, Superior D&E and Superior filed a reply to the Motion to Show Cause, asserting that W. Baumann had asked Edgerton to stop all activities at The Landfill because they had yet to enter into an agreement, Edgerton did not complete the required plans for Cleveland, and Edgerton was dumping materials at The Landfill without an agreement  ECF Dkt. #80 at 2.  W. Baumann indicated that the Health Department thereafter sent a cease and desist letter to Edgerton stating that it was violating this Court's Consent Decree as no plans had been submitted or approved as required.  *Id.* at 3.  He noted that the cease and desist letter was issued the day before Cleveland's first motion to show cause and no one notified W. Baumann or

-11-

the Court of that letter even though Cleveland continued to assert that W. Baumann wrongfully

requested that Edgerton stop activities when Cleveland had already ordered Edgerton to stop.  *Id.*

  W. Baumann further contended that Edgerton's operator rights expired in 2006 and when

he motioned the Court to authorize a change of operator for 2007 due to Edgerton's improper

conduct, he withdrew the motion based upon an agreement with Cleveland to cooperate with a

change of operators upon a showing of proof of a bond and reasonable reimbursement of funds

to Edgerton.  ECF Dkt. #82 at 5.  W.Baumann, Bradley, MEB, Superior D&E and Superior

asserted that Cleveland thereafter did not cooperate and instead accepted a fraudulent renewal

application from Edgerton that changed the name of The Landfill, alleged that Edgerton owned

The Landfill, and alleged that it had an agreement with W. Baumann.  *Id.*  W.Baumann, Bradley,

MEB, Superior D&E and Superior alleged that Cleveland issued the license without discussing it

with W.Baumann and when he discovered this, he contacted the OEPA and Cleveland for the

status of pending OEPA applications for permits, which resulted in Cleveland issuing the cease

and desist letter to Edgerton.  *Id.*  W.Baumann, Bradley, MEB, Superior D&E and Superior

averred that a meeting was held thereafter and Cleveland refused to correct the problem and

refused to let W. Baumann change operators and remove Edgerton.  *Id.* at 6.  W. Baumann also

noted that he filed an eviction and ejection action against Edgerton from The Landfill in

Cleveland Housing court in order to get a new operator to satisfy all of the compliance issues,

but that court needed clarification from this Court to determine whether the 2006 license

designating Edgerton as operator extended beyond 2006.  *Id.* at 6-7.  These Third-Party

Defendants requested that the Court issue a Show Cause Order to Cleveland for contempt in

continuing a course of conduct that helped Edgerton disregard the Court's Consent Decree.  *Id.*

at 7.

The Court scheduled a Motion to Show Cause Hearing for July 24, 2007 and held the hearing.  ECF Dkt. #81.  No Order emanated from this hearing or the motion.

On November 16, 2007, W. Baumann, Bradley Rd., MEB, Superior D&E and Superior filed a motion to clarify the Consent Decree and Final Judgment Entry.  ECF Dkt. #83.  They reviewed the circumstances surrounding Edgerton's failings as operator of The Landfill and the fact that no lease or operating agreement existed between the parties as to operating The Landfill.  *Id*. at 2-3.  They requested that the Court clarify the Consent Order to allow them to substitute a new operator in 2008.  *Id*. at 3.  On December 10, 2007, Cleveland responded to the motion, asserting that the motion to clarify was nothing more than a motion to modify the Consent Decree, which the Court could not do unilaterally because the Consent Decree and settlement agreement between the parties were binding contracts and required agreement in writing by both parties in order to modify any terms.  *Id*. at 2-3.

On December 12, 2007, the Court issued a marginal Order denying the Motion to Clarify the Consent Decree and Final Judgment Entry.

On April 7, 2014, W. Baumann, Bradley and Landsong filed the instant Motion to Show Cause why Cleveland should not be held in contempt for violating this Court's July 13, 2006 Consent Decree and Final Judgment Entry.  ECF Dkt. #88.  They allege that Cleveland is wrongfully obstructing and interfering with implementation of the Consent Decree and Final Judgment Entry by refusing to issue a license to W. Baumann, Bradley and Landsong to operate The Landfill and to perform remedial work on the property.  *Id*.

-13-

On May 23, 2014, Cleveland and the Health Department filed a brief in opposition to the Motion to Show Cause. ECF Dkt. #91. They assert that they have fully complied with the Consent Decree because it addressed only the licensing period of 2003 to 2006 and identified only Edgerton as the entity having the agreed upon right to the CD&D license in 2006 for The Landfill. *Id*. at 2.

W. Baumann, Bradley and Landsong filed a reply brief on June 9, 2014 asserting that Cleveland asked the OEPA to take the lead in resolving issues regarding The Landfill and the OEPA did so and verified that the 2013 and 2014 C&DD Facility license applications submitted by Landsong met all technical requirements of the license. ECF Dkt. #93 at 1-2. Despite meeting these requirements, W. Baumann, Bradley and Landsong assert that Cleveland refused to issue the license to Landsong based upon claims of improper zoning. *Id*. at 4. They contend that Cleveland's refusal to issue the license to Landsong violates the Consent Decree because the purpose of the Consent Decree was to preserve The Landfill's status and continuity as an ongoing concern. *Id*. at 6.

## II.    STANDARD OF REVIEW

The authority to punish for contempt is an inherent power of all American courts. *Ex Parte Robinson*, 86 U.S. (19 Wall.) 505, 22 L. Ed. 205 (1874); *Hale v. State*, 55 Ohio St. 210, 45 N.E. 199 (1896); *Zakany v. Zakany*, 9 Ohio St. 3d 192, 459 N.E.2d 870 (1984). Indeed, when a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court. *See NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987). Recognizing that the power "to punish for contempts" should not be used lightly, the Supreme Court has stated that this power "is a necessary and integral part of the independence of the judiciary, and

-14-

is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911).  Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner. *Cincinnati Bronze*, 829 F.2d at 590.

With respect to civil contempt proceedings, "judicial sanctions . . . may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947).  In order to hold a litigant in contempt, the movant must produce clear and convincing evidence that shows that the defendant "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Cincinnati Bronze*, 829 F.2d at 591 (quotation and brackets omitted). Clear and convincing evidence is a not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence.  *See Consol. Coal Co. v. Local Union No. 1784, United Mine Workers of Am.*, 514 F.2d 763, 766 (6th Cir. 1975).

Once the moving party establishes a prima facie case, the burden shifts to the contemnor, who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order.  *United States v. Rylander*, 460 U.S. 752, 757 (1983) ("where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action.  It is settled, however, that in raising this defense, the defendant has a burden of production.").  To meet this burden, the contemnor must show "categorically and in

-15-

detail why he or she is unable to comply with the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quotation omitted).  Finally, when evaluating the failure of a party to comply with a court order, the Court must also consider whether the party "took all reasonable steps within [his] power to comply with the court's order." *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989).

## III.   LAW AND ANALYSIS

In their Motion to Show Cause, W. Baumann, Bradley and Landsong review the governing law on consent decrees and assert that Cleveland knew about the content of the Consent Decree because it twice moved the Court to find W. Baumann and Bradley in contempt for violating it.  ECF Dkt. #88 at 17.  W. Baumann, Bradley and Landsong contend that the Consent Decree "reinstated and retroactively validated the C&DD Facility license from and after 2004." *Id*. at 18.  They allege that the Consent Decree "unequivocally requires the City of Cleveland to allow the continued operation of a CD&D Landfill on the Bradley Rd. Landfill Property" and it also "unequivocally requires the owner and operator of that Landfill to correct certain environmental conditions that pose risks to the health and welfare of adjacent neighborhoods." *Id.* at 5.  W. Baumann, Bradley and Landsong assert that Cleveland is violating the Consent Decree by refusing to issue a license to them so that remedial work and operation of The Landfill could resume as contemplated and secured by the Consent Decree.  ECF Dkt. #88 at 1.  They cite to numerous instances, including those occurring in 2010, 2013 and 2014, as evidence that Cleveland continues to impede implementation of the Consent Decree and to contrive excuses upon which to reject reissuing the license as required by the Consent Decree. *Id*. at 18-19.

-16-

Cleveland contends that Landsong cannot sustain its contempt action because it is not a party to this lawsuit and was nowhere named in the Consent Decree.  ECF Dkt. #91 at 1-2. Cleveland also asserts, among other arguments, that W. Baumann and Bradley cannot meet the burden of proof required to prove contempt because the Consent Decree addressed only the time period of 2003 through 2006 and the Consent Decree identified Edgerton as the only entity to which Cleveland had to issue the license for that time period.  *Id*.

The United States Supreme Court has noted that "consent decrees bear some of the earmarks of judgments entered after litigation" and "[a]t the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). The resemblance to contracts requires that the scope of a consent decree "be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to" the consent decree. *United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971).

W. Baumann, Bradley and Landsong discuss the original purposes underlying the Consent Decree and present arguments asserting that Cleveland's conduct in involving the OEPA in helping Landsong gain compliance with technical requirements and in a rezoning ordinance supported by Cleveland after 2006 shows proof an its intent to be bound beyond 2006. ECF Dkt. #88.  They also set forth the current reasons that Cleveland has used for denying a license to Landsong that were never presented before to show that Cleveland continues to violate the Consent Decree without valid reasons.  They assert that Cleveland's actions subvert the dual alleged purposes of the Consent Decree:  to restore licensing continuity to and authorize C&DD

operations at The Landfill; and to correct outstanding Landfill site and regulations violations. ECF Dkt. #93 at 2.

However, the undersigned notes that interpreting a consent decree as written requires that the Court focus on its four corners and not the purposes of one of the parties in coming to an agreement that is represented in a Consent Decree. *See U.S. v. Armour & Co.*, 402 U.S. 673, 682-683, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)("[t]he decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."); *see also Shy v. Navistar Intern. Corp.,* 701 F.3d 523, 530 (6th Cir. 2012)("while Navistar's argument that the parties' original intent was to permanently reduce Navistrar's retiree healthcare costs might be relevant in a motion to modify the consent decree, the interpretation of the consent decree as written should focus only within the four corners of the consent decree.")(citing *U.S. v. Armour*, 402 U.S. at 682).

Reviewing the four corners of the Consent Decree and Final Judgment Entry in the instant case, the undersigned recommends that the Court find that it concerns only the issuance of licenses for the periods of 2003, 2004, 2005 and 2006. The Consent Decree and Final Judgement Entry that the parties agreed to specifically refers to those four years, ordering that the 2003 C&DD license for The Landfill be reinstated and the 2004, 2005 and 2006 renewal licenses be deemed issued with specific delineated modifications intended for the issuance of those licenses only. ECF Dkt. #61 at 1-3. The Consent Decree does not indicate or refer to any

-18-

other expiration date or further period of time in which licenses must be deemed issued or renewed.  W. Baumann, Bradley and Landsong fail to present clear and convincing evidence that Cleveland did not comply with these terms.

W. Baumann, Bradley and Landsong cite to instances that they assert show that Cleveland was still operating under the Consent Decree and Final Judgment Entry.  They cite to Cleveland's request of the OEPA in 2012 and 2013 to negotiate with them which resulted in an agreement to resume operations at The Landfill to correct all outstanding regulatory compliance issues.  ECF Dkt. #88 at 2.  They also contend that "at the City's request," the OEPA and W. Baumann, Bradley and Landsong and their engineers "recently resolved all deficiencies in the 2013 and 2014 Facility license applications submitted to the City."  *Id.*  They noted that three intervening state court lawsuits involving The Landfill's ownership and operation have also been recently resolved.  *Id.*  They contend that despite all of these efforts on their part, Cleveland still refuses to issue them the license for The Landfill, in violation of the Consent Decree and Final Judgment Entry.  *Id.* at 2-3.  W. Baumann, Bradley and Landsong also cite to the recent raising of zoning problems with The Landfill that Cleveland has given for refusing to issue them a license.  *Id.* at 13.  They further cite to language in the settlement agreement that was incorporated into the Consent Decree and Final Judgment Entry.  *Id.*

The undersigned recommends that the Court find that none of these recent instances show that Cleveland has violated the Consent Decree and Final Judgment Entry or the Settlement Agreement.  The Consent Decree and Final Judgment Entry required that Cleveland reinstate the 2003 C&DD license for The Landfill and deem the 2004, 2005 and 2006 licenses issued subject to the modifications specified therein as to those licenses only.  No language in either the

-19-

Consent Decree and Final Judgment Entry or the settlement agreement required that Cleveland

deem issued any licenses beyond the issuance of the 2006 license .  The facts that other lawsuits

have emanated about the operator of The Landfill and other issues have arisen concerning the

ability of Landsong to come into compliance with licensing requirements has no bearing upon

the requirements of Cleveland or W. Baumann and Bradley dictated by the Consent Decree and

Final Judgment Entry.

**IV.**   **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the Court DENY the Motion

for an Order to Show Cause filed by W. Baumann, Bradley and Landsong.  ECF Dkt. #88.


Dated: October 21, 2014                              /s/George J. Limbert
                                                     GEORGE J. LIMBERT
                                                     United States Magistrate Judge


Any objections to this Report and Recommendation must be filed with the Clerk of Court
within fourteen (14) days of service of this notice.  Fed. R. Crim. P. 59.  Failure to file objections
within the specified time constitutes a WAIVER of the right to appeal the Magistrate Judge's
recommendation.  *Id.*